**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN FORSHEY, an incapacitated person, by the Guardian of his Person and Estate, LINDA J. FORSHEY,<br><br>           Plaintiff,<br><br>v.<br><br>HUNTINGDON COUNTY, et al.,<br><br>           Defendants | CIVIL ACTION NO. 1:13-CV-00285<br><br>(RAMBO, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is a civil rights action, initiated upon the filing of the complaint in this matter on February 5, 2013, seeking an award of damages pursuant to 42 U.S.C. § 1983 for the alleged deprivation of Brian Forshey's substantive due process rights under the Fourteenth Amendment to the United States Constitution while being held at the Huntingdon County Prison as a pretrial detainee. (Doc. 1). A single-count, second amended complaint was filed in this matter on March 26, 2015. (Doc. 37). Pending before this Court is a motion to dismiss the second amended complaint, filed by the Huntingdon County Defendants.[1] (Doc. 39). For the reasons provided herein, it is recommended that the motion (Doc. 39), be denied.

**I.   BACKGROUND**

The Estate of Brian Forshey filed the instant civil rights action pursuant to 42 U.S.C.

---

[1] The remaining Huntingdon County Defendants are: Huntingdon County, Huntingdon County Prison Board, Warden Duane Black, and Deputy Warden Darrell Bair.

§ 1983 on February 5, 2013 against the Huntingdon County Defendants for injuries caused by the conditions of confinement to which he was subjected to while detained at the Huntingdon County Prison. A second amended complaint in this matter was filed on March 26, 2015. [2]

This action arises out of an incident that occurred on July 24, 2011, while Forshey was incarcerated at Huntingdon County Prison as a pretrial detainee. According to the allegations contained in the second amended complaint (Doc. 37), Forshey had been in custody for several months prior to July 24, 2011. He had a known medical history of seizures, hypertension, and mental health issues that required counseling. In the several days leading up to July 24, 2011, he had displayed overt signs of illness but did not receive medical attention.

The cell block where Forshey was confined was extremely hot, poorly ventilated, not air-conditioned, and serviced by two ineffective ceiling fans. Guards, at the direction of and

---

[2] By way of procedural background, on March 11, 2014, the Court dismissed certain counts and defendants named the original complaint, but granted Forshey leave to file an amended complaint. (Doc. 14). On April 2, 2014, Forshey filed a one-count amended complaint. (Doc. 19). On April 21, 2014, Defendants filed a motion to dismiss the complaint as against Huntingdon County and the Huntingdon County Prison Board for failure to state a claim, together with a brief in support of the motion. (Doc. 21; Doc. 22). On December 2, 2014, this Court entered a report recommending that Defendants' motion to dismiss be granted for failure to state a claim for municipal liability. (Doc. 33). On January 27, 2015, the District Court deferred disposition on the pending Report and Recommendation until such time as Defendants could take additional discovery. In doing so, the District Court permitted Forshey to file a second amended complaint supporting a cause of action for municipal liability. (Doc. 36). A second amended complaint was filed in the instant action on March 26, 2015. (Doc. 37). In light of Forshey having filed a second amended complaint, the Court vacated its previous Report and Recommendation and denied the motion to dismiss as moot. (Doc. 46).

pursuant to policies promulgated by the Defendants,[3] turned hot showers on and left them on when no one was using them, which contributed to the unbearably hot and suffocating temperatures of the cell block. Inmates were denied ice water, but were told that they could take their shirts off when the heat was unbearable. According to the National Weather Service, it was over 100 degrees in Huntingdon on July 22, and July 23, and was 99 degrees on July 24, 2011.

On July 24, 2011, Forshey did not eat breakfast, and despite displaying overt signs of illness, he was placed, at the direction of Warden Black and Deputy Warden Bair, in solitary confinement in a stiflingly hot windowless cell. Shortly after being placed in solitary confinement, Forshey suffered heat stroke. He was found that evening lying unresponsive in his cell, convulsing and foaming at the mouth. He was subsequently transferred by ambulance to nearby J.C. Blair Memorial Hospital, in critical condition.

When Forshey arrived at the hospital, he was still unresponsive, vomiting copious amounts of brown liquid and blood, with a temperature of 108 degrees. Forshey was diagnosed with hyperpyrexia, cerebral edema, and hypotension, with a systolic blood pressure of 71. He was emergently stabilized, placed on a ventilator, and transferred by ambulance, still unresponsive and breathing irregularly, to Geisinger Medical Center in Danville, Pennsylvania.

At Geisinger, Forshey was diagnosed with heat stroke complicated by dehydration, Guillian Barr Syndrome, quadriplegia, acute respiratory failure, hyperthermia, and altered mental state. He was confined at Geisinger from July 25, 2011, through November 15,

---

[3] The second amended complaint does not identify a particular defendant or defendants.

2011, during which time he went into respiratory failure, suffered multiple infections, including pneumonia, had a feeding tube placed in his stomach, and had a tracheotomy inserted for breathing. On November 15, 2011, Forshey was transferred to a nursing home for further care. Forshey is now totally and permanently disabled, both physically and mentally.

On April 6, 2015, Defendants filed a motion to dismiss the second amended complaint (Doc. 39), together with a brief in support of their motion (Doc. 40). Specifically, Defendants move to dismiss Huntingdon County, the Huntingdon County Prison Board, and Warden Duane Black from the instant action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 39). Forshey filed a brief in opposition to the motion to dismiss on April 13, 2015. (Doc. 41). A reply brief was filed on April 30, 2015. (Doc. 42).

Having been fully briefed, this matter is ripe for disposition.

## II. MOTION TO DISMISS STANDARD

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler*, 578 F.3d at 209-10.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), The Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

#### A. MUNICIPAL LIABILITY UNDER *MONELL*

The instant motion seeks dismissal of Defendants Huntingdon County and Huntingdon County Prison Board pursuant to Rule 12(b)(6) on the ground that the

amended complaint fails to state a claim for municipal liability under § 1983.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Monell*, 436 U.S. at 690. Huntingdon County is such a municipality subject to liability as a "person" under § 1983. *See Monell*, 436 U.S. at 694; *Mulholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Similarly, Huntingdon County Prison Board is a "person" subject to liability under § 1983. *See Meyers v. Schuykill County Prison*, No. 4:CV-04-1123, 2006 WL 559467, at *9 (M.D. Pa. Mar. 7, 2006).

A municipality can be liable under § 1983 for a constitutional injury that directly results from a municipality's policy, custom, or practice. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 695 (1978). "Under *Monell,* a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247, 249 (3d Cir. 2007). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (quoting *Monell,* 436 U.S. at 694). "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Guided by these threshold principles, the Third Circuit has stated that "a policy or

6

custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Corr. Facility,* 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks and citations omitted). Indeed, "[e]ven in the absence of formal policymaking activity, an 'official policy' may be inferred from informal acts or omissions of supervisory municipal officials . . . ." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 (3d Cir. 1988) (citations and internal quotation marks omitted). Stated differently, a policy of inaction can give rise to municipal liability under § 1983 when the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights. However, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy"); *Losch,* 736 F.2d at 911 ("A policy cannot ordinarily be inferred from a single instance of illegality . . . ."). Thus, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of custom attributable to the municipality.

The *Monell* claims in the original and amended complaint against these municipal defendants were dismissed because they "include[d] nothing more than a conclusory

allegation that 'the policies for operation of the prison and treatment of prisoners' and 'their widespread practice and custom' resulted in the conditions of confinement amidst which Forshey suffered a catastrophic heatstroke event." (Doc. 13, at 14; Doc. 14; *see also* Doc. 33). Notably, Forshey's heatstroke was the only incident alleged in the complaint that resulted from the alleged practice and custom, and thus the original complaint failed to state a claim for municipal liability under *Monell*. (Doc. 13, at 14–15 (citing *Almodovar v. City of Philadelphia*, 528 Fed. App'x 129, 132 (3d Cir. 2013), and *Greco v. Senchak*, No. 3:12-2576, 2013 WL 4520847, at *12 (M.D. Pa. Aug. 26, 2013)); *see also* Doc. 14). In dismissing Forshey's *Monell* claims, the Court granted Forshey leave to file amended complaints. (Doc. 14; *see also* Doc. 13, at 15; Doc. 36).

In attempt to fix the pleading deficiencies, Forshey has included the following additional facts in his second amended complaint:

8. On or about July 24, 2011, and for SEVERAL days prior thereto, Brian Forshey, who was at that time a pretrial detainee because he could not afford bail, had displayed overt signs of illness, for which defendants failed to provide him with needed medical attention.

9. The main cell block to which Brian Forshey was confined was extremely hot, sweltering, unventilated, and non-air-conditioned. It was also overcrowded, i.e., held more prisoners that it was built to accommodate, throughout the month of July, 2011. . . .

   . . .

11. . . . Defendants Huntingdon County and Huntingdon Country Prison Board, under whose authority, supervision and control the Huntingdon County prison was operated, were deliberately indifferent to the dangerous and inhumane, cruel and unusual, conditions to which the prisoners confined therein, including Brian Forshey, were subject, particular on hot summer days when the outside temperature approached or exceed 100[ degrees] and the inside temperature in the non-air-conditioned part of the prison was even more hot and oppressive. Evidence of their deliberate indifference includes:

(a) Although the two story prison was constructed in 1979 with vents to accommodate air conditioning for the entire building, as of July, 2011, when Brian Forshey was injured, Huntingdon County and the Huntingdon County Prison Board (their membership overlapped) had provided air conditioning only for the lower level (which housed prisoners who were on work release) and that part of the second level to which employees of the prison, but not the prisoners, had access. However, Huntingdon County and the Huntingdon County Prison Board failed to authorize or provide air conditioning for the main cell block and the two insolation cells where the prisoners were forced to reside, displaying a humae concern for the heatlh and wellbeing of employees of Huntingdon County, but deliberate indifference to the health and well-being of the inmates housed in the non-air-conditioned part of the prison's second level, including Brian Forshey. . . .

(b) Warden Black testified that, prior to Brian Forshey's injury, he had, on more than one occasion, requested the Huntingdon County Commissioners to air condition the main cell block, but they did not do so until after Forshey suffered his devastating heat stroke. This was deliberate indifference to the health and well-being of the prisoners because the defendants had air-conditioned the lower level of the prison for the benefit of the prisoners on work release and had air-conditioned the second level of the prison in the areas to which the County's employees had access, but failed to air-condition the main cell block where most of the prisoners, including Brian Forshey, were forced to reside.

. . .

(d) Despite repeated requests by numerous prisoners, prisoners in the main cell block, such as Brian Forshey, were refused ice water eve[n] on the hottest days, though ice water was available for the corrections officers and other prison employees. (According to the national Weather Service, it was over 100[ degrees] in Huntingdon on both July 22, and July 23, the two days before Forshey was taken to the hospital, and 99[ degrees] on July 24). Prisoners were told they could take their shirts off when the heat became unbearable.

(e) No thermometers were placed or used in the main cell block. Therefore, no one knew how hot it got there in the summer. . . .

(f) No body thermometers were available that prison employees could use to determine the body temperature of a prisoner who

       complained of illness, as Brian Forshey had done in the days before he was finally taken to the hospital suffering from brain injury caused by a devastating heat stroke. One ear thermometer was available for use by the prison doctor, who came in once a week or so for an hour or two at a time, and by the nurse, who worked the daylight shift only four days a week. It was kept under lock and key at all other times.

  (g) The Huntingdon County Commissioners and the Huntingdon County Prison Board were aware that a nurse was on duty at the prison less than 20% of the time (32 hours a week), so that prisoners who suffered from illnesses, hear-related or otherwise, would not be seen by doctors or other medically trained personnel more than 80% of the time, but were deliberatively indifferent to this fact. They adopted no policy and followed a "custom of laxity" with respect to the well-being of prisoners who might show signs of illness in the stifling, oppressive heat of the their non-air-conditioned cells on hot summer days when the outside temperature approached or exceeded 100[ degrees]. . . .

  (h) According to Warden Black, at the time that Forshey became ill, the defendants had no policy that when prisoners became ill they be seen at the prison by either a doctor, nurse, physician's assistant, or somebody else with medical training. . . .

(Doc. 37, at 7).

    Taken as true, the new allegations set forth in the second amended complaint are sufficient to support an inference of actual or constructive knowledge by the municipal defendants of the alleged custom or practice that resulted in Forshey's injuries; namely, a custom of laxity with respect to the excessive heat and lack of ventilation problems in the county jail. *See Colburn*, 838 F.2d at 672. Forshey alleges that the jail was maintained in a manner that placed inmates at a serious risk of harm, specifically with respect to the "policy" of guards turning hot showers on and leaving them on to "make[ ] the cell block more hot, steamy, oppressive, and unhealthy for inmates;" the construction of the prison itself, which was built to accommodate air conditioning for the entire building, but was not utilized in the main cell block; the presence of defective wall fans that were "caked with dirt

and debris that had accumulated over a long period of time because of lack of maintenance;" and the refusal to provide prisoners with ice water on hottest days. (Doc. 37, at 3). Further, Forshey alleges that in spite of repeated requests by Warden Black to provide the main cell block with air conditioning, the Huntingdon County Commissioners, comprised of members of the Huntingdon County Prison Board, made no effort to address the excessive heat conditions. Moreover, Forshey alleges jail personnel were not provided with minimal training in recognizing serious health problems, such as heat-related illness, in inmates. Under the liberal pleading requirements of Rule 8(a), the facts as alleged are sufficient to establish the existence of deliberate indifference to the extent necessary to survive a motion to dismiss. Accordingly, it is recommended that the two municipal defendants — Huntingdon County and the Huntingdon County Prison Board — not be dismissed from this case.

### B. DELIBERATE INDIFFERENCE CLAIM AGAINST WARDEN DUANE BLACK

Defendants seek dismissal of Warden Duane Black from the instant action on the basis that Forshey has improperly attempted to impose liability on Warden Duane Black by relying on his alleged failure to report the incident at the monthly meeting. (Doc. 40, at 11).

Here, while Defendants are correct that the allegations regarding actions taken by Warden Black after the incident cannot form the basis of a deliberate indifference claim, the challenged conduct encompasses more than Warden Black's failure to report Forshey's medical condition to the Huntingdon County Prison Board after Forshey suffered heatstroke. Indeed, Defendants overlook the additional allegations contained within the second amended complaint that suggest that Warden Black perceived a substantial risk to Forshey and disregarded that risk prior to Forshey suffering from heatstroke.

To state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303–04 (1991)). To satisfy the latter, objective component, a plaintiff must allege conditions that, either alone or in combination, deprive him or her of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, or personal safety. *See Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has previously held that heatstroke, in particular, is a serious medical condition, and that acts or omissions of a deliberately indifferent nature that cause heatstroke are sufficient to state a substantive due process claim based on conditions of pretrial confinement. *See Kost*, 1 F.3d at 189.

To satisfy the subjective component of a conditions of confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 & n.4 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Farmer,* 511 U.S. at 837. Deliberate indifference may be inferred from circumstantial evidence "if an excessive risk to inmate health and safety was so obvious that an official must have known about it." *Serafin v. City of Johnstown*, 53 F. App'x 211, 214 (3d Cir. 2002) (citing *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001)). *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1024 (3d Cir. 1991). Moreover, the Third Circuit has held that a plaintiff can "make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation." *Jones v. Beard,* 145 F. App'x 743 (3d Cir. 2005). However, in order to prevail on this basis, a plaintiff must allege facts supporting that the risk "was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it . . . ." *Farmer*, 511 U.S. at 842 (emphasis added).

   Judged against the foregoing principles, Forshey has offered sufficient allegations to support a claim that Warden Black was aware of and disregarded a substantial risk of harm to Forshey by tacitly authorizing the circumstances about which Forshey complains. Indeed, based on the alleged obvious nature of these exceedingly hot conditions in the jail, the allegations that inmates complained of symptoms related to heat-related illness, and Warden Black's own admission that he requested, on numerous occasions, that air conditioning be provided to the main cell, Forshey has succeeded in making out a deliberate indifference claim to survive a motion to dismiss. As the facts alleged make plausible a violation of the Fourteenth Amendment as against Defendant Warden Black, this Court recommends denying Defendants' motion to dismiss with respect to this defendant.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The motion to dismiss (Doc. 39) be **DENIED**; and

2. This matter be remanded to the undersigned for further proceedings.

                                              **BY THE COURT:**

**Dated: August 10, 2015**                        *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                       **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN FORSHEY, an incapacitated person, by the Guardian of his Person and Estate, LINDA J. FORSHEY, <br><br> Plaintiff, <br><br> v. <br><br> HUNTINGDON COUNTY, et al., <br><br> Defendants | CIVIL ACTION NO. 1:13-CV-00285 <br><br> (RAMBO, J.) <br> (MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 10, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: August 10, 2015**                                  *s/ Karoline Mehalchick*
                                                                                  **KAROLINE MEHALCHICK**
                                                                                  **United States Magistrate Judge**