## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN FORSHEY, an incapacitated Person, by the Guardian of his person and estate, LINDA J. FORSHEY, Plaintiff | CIVIL ACTION - LAW NO: 1:13-CV-00285 |
| v. | HONORABLE SYLVIA H. RAMBO |
| HUNTINGDON COUNTY, HUNTINGDON COUNTY PRISON BOARD, DUANE BLACK, DARRELL BAIR and MARK MINOR, M.D., Defendants | MAGISTRATE JUDGE KAROLINE MEHALCHICK  JURY TRIAL DEMANDED  ELECTRONICALLY FILED |

### BRIEF IN SUPPORT OF HUNTINGDON COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff filed a Second Amended Complaint in this matter on March 26, 2015.  Doc. 37.  Plaintiff's action is based on Brian Forshey's incarceration at the Huntingdon County Prison.  Specifically, Plaintiff's suit is based on heat-related injuries Forshey purportedly sustained during a brief heatwave in July 2011.  Id. As a result of Forshey's alleged injuries, Plaintiff has asserted a single Eighth Amendment claim for cruel and unusual punishment against Huntingdon County Defendants.[1]  Id. at ¶¶ 21-23.

---

[1] In the Second Amended Complaint, Plaintiff still does not identify the specific legal theories upon which the single Eighth Amendment claim is based.  As trial

1

At the time of Plaintiff's July 2011 incarceration at the Huntingdon County Prison, the main cell block of the facility was not air conditioned, but other sources of ventilation provided fresh air circulation throughout the cell block, including an air-handling system, windows and desk fans in each cell, and exhaust fans in the cell block.   See Statement of Undisputed Material Facts at ¶¶ 1-9.   No thermometers were installed in the main cell block of the facility, but the prison consistently received 100% compliance reviews during Department of Corrections inspections, which inspections factored "climatic conditions" into the facility's overall compliance score. Id. at ¶¶ 10-11. The evidence also indicates that inmates are provided with refrigerated beverages at meals and ice water during recreation time, and that inmates have constant access to cold tap water in their cells. Id. at ¶¶ 12-14.

With respect to inmate hygiene, inmates incarcerated at the Huntingdon County Prison are expected to shower daily. Id. at ¶ 15. Thus, the showers in the main cell block are turned on twice each day. Id. at ¶ 16. Although the showers are turned on by a correctional officer stationed in the control room, each individual shower can be turned off manually by the inmates. Id. at ¶ 17. There is no evidence suggesting that officers intentionally turned the showers on to increase

---

approaches, Plaintiff should be required to identify his legal theories with specificity.

temperatures in the facility, which is especially true in light of the fact that inmates can turn the showers off themselves. Id. at ¶ 18.

In mid to late July 2011, a heatwave swept through Huntingdon County and high temperatures were above average during that period. Id. at ¶ 19. Plaintiff Brian Forshey suffered from an unspecified heat sensitivity that was not disclosed to Huntingdon County Prison officials. Id. at ¶ 20. On July 23, 2011, Plaintiff admitted to his mother that he was not consuming fluids, even though temperatures were above average and Plaintiff was sensitive to heat. Id. at ¶ 21. Thereafter, on July 24, 2011, Plaintiff complained of dizziness. Id. at ¶ 22. Correctional officers immediately contacted the prison nurse, who directed the officers to relocate Plaintiff to a holding cell for observation. Id. at ¶ 23. The facility—which only accommodates up to 48 inmates—does not maintain an around-the-clock medical staff. Id. at ¶¶ 2, 24. Although the holding cell was not air conditioned, it received cold air from other nearby, air conditioned areas in the corridor. Id. at ¶ 25. Later that evening, Plaintiff was discovered unresponsive in the holding cell, and emergency responders were immediately summoned to transport Plaintiff for additional medical care. Id. at ¶ 26.

Plaintiff has never clearly identified the legal theories on which this action is based and the allegations of fact intended to support the same. However, it appears that Plaintiff attempts to assert standalone Eighth Amendment claims based on the

failure to air condition the main cell block, install thermometers in the cell block, and retain an around-the-clock medical staff at the facility. Doc. 37 at ¶¶ 11(a), 11(b), 11(f), 11(g). Plaintiff also appears to assert a claim against Warden Black and Deputy Warden Bair for deliberate indifference to a serious medical need. Id. at ¶ 22. Lastly, Plaintiff appears to assert a Monell claim based on a purported policy of leaving showers running to increase the temperatures inside the facility. Id. at ¶ 9.

Huntingdon County Defendants have filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Brief is filed in support thereof.

## II.   QUESTIONS PRESENTED

A.   Whether Huntingdon County Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiff's Claims Arising Out Of The Failure To Install Air-Conditioning In The Main Cell Block Of The Prison, The Failure To Have Around-The-Clock Medical Staffing At The Facility, And The Failure To Install A Thermometer In The Main Cell Block When None Of Those Things Are Required By The Constitution?

Suggested Answer:   In the affirmative.

B.   Whether Defendants Black And Bair Are Entitled To Judgment As A Matter Of Law On Plaintiff's Claim For Deliberate Indifference To A Serious Medical Need When The Evidence Indicates That Neither Defendant Was Aware Of Plaintiff's Medical Condition Before His Hospitalization And When Defendant Bair Was Entitled To Rely On The Medical Decisions Of Nurse Watkins In Any Event?

Suggested Answer:   In the affirmative.

C.    Whether Judgment Should Be Entered In Favor Of Huntingdon County Defendants On Plaintiff's <u>Monell</u> Claim Based On The Purported Policy Of Leaving Showers Running In The Main Cell Block When No Evidence Supports The Claim?

Suggested Answer:        In the affirmative.

D.    Whether Defendants Black And Bair Are Entitled To Qualified Immunity On Plaintiff's Claims Arising Out Of The Lack Of Air Conditioning, A Full-Time Medical Staff, And Thermometers In The Main Cell Block When Those Claims Are Not Based On Clearly Established Constitutional Rights?

Suggested Answer:        In the affirmative.

E.    Whether, Assuming Judgment Is Entered In Favor Of Defendants Black And Bair With Respect To Plaintiff's Individual Capacity Claim, Defendants Black And Bair Should Be Dismissed As Defendants In This Action When The Official Capacity Claims Against Them Based On The Alleged Promulgation Of Unconstitutional Policies Are Redundant Of The Claims Against Huntingdon County And Huntingdon County Prison Board?

Suggested Answer:        In the affirmative.

## III.   ARGUMENT

**A.    Judgment Should Be Entered In Favor Of Huntingdon County Defendants On Plaintiff's Eighth Amendment Claims Based On A Lack Of Air Conditioning, Lack Of Around-The-Clock Medical Staffing, And Lack Of Thermometers In The Main Cell Block Because None Of Those Are Required By The Constitution**

In the Second Amended Complaint, Plaintiff appears to assert standalone Eighth Amendment claims based on a lack of air conditioning in the main cell block, the absence of an around-the-clock medical staff at the facility, and the lack of a thermometer in the main cell block. <u>See</u> Doc. 37 at ¶ 11.  It is not disputed that the main cell block of the Huntingdon County Prison was not air conditioned

5

in July 2011, the time of the alleged incident involving Plaintiff. See Statement of Undisputed Material Facts at ¶ 4. Similarly, it is not disputed that the Huntingdon County Prison—a small county facility with limited resources—did not employ an around-the-clock medical staff in July 2011. Id. at ¶ 24. Finally, it is not disputed that a thermometer was not installed in the main cell block of the facility. Id. at ¶ 10.

"The Constitution 'does not mandate comfortable prisons'...." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, "[i]nmates cannot expect the amenities, conveniences, and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988). Rather, the Eighth Amendment simply requires prison officials to provide humane conditions and to ensure that inmates are provided food, clothing, shelter, safety, and medical care. Farmer, 511 U.S. at 832-33 (citations omitted). In this case, Plaintiff has attempted to constitutionalize amenities that simply are not required under the Eighth Amendment, and judgment should be entered in favor of Huntingdon County Defendants on those claims.

### 1.   *Inmates Do Not Have A Constitutional Right To Air Conditioned Cells*

In the Second Amended Complaint and throughout the course of this litigation, Plaintiff has intimated that the lack of air conditioning in the main cell block of the Huntingdon County Prison was in and of itself unconstitutional.

However, the Constitution does not require air conditioned prison cells.  Indeed, a number of federal courts have found prison cells without air conditioning to be constitutional in climates far warmer than that found in Huntingdon County, Pennsylvania.  See, e.g. Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004) (The conditions of confinement on Florida's death row were not unconstitutional, even when temperatures routinely exceeded 100 degrees, when the cells did not have air conditioning but did have an air circulation system); Lane v. Hutcheson, 794 F.Supp. 877 (E.D. Mo. 1992) (lack of air conditioning in the cells of a southern Missouri prison did not violate the Eighth Amendment when the cells had other ventilation, including fans); Singletary v. Bandy, No. 2:10-CV-115, 2010 WL 4117456, *2 (N.D. Ga. Oct. 18, 2010) (internal quotation omitted) ("Further, concrete housing units with a manual vent system, no air-conditioning or circulating fans, summer-time temperatures that range between eighty to eighty-six degrees and that rise to more than ninety degrees for nine percent of the summer (comparable to a residential setting in Florida in a building that is not air-conditioned), generally, do not offend the constitution.").

As the foregoing cases suggest, the Constitution does not mandate that prison cells be air conditioned.  Thus, Plaintiff's standalone claim based on the failure to air condition the main cell block of the Huntingdon County Prison is without merit.  Indeed, Plaintiff's own expert witness, Cameron Lindsay, has

7

conceded that the lack of air conditioning in a cell block is not in and of itself unconstitutional.   See Statement of Undisputed Material Facts at ¶ 31. Accordingly, summary judgment should be entered in favor of Huntingdon County Defendants on Plaintiff's Eighth Amendment claim based on the lack of air conditioning in the main cell block.

### 2.   *The Eighth Amendment Does Not Obligated A Correctional Facility To Employ A Full-Time, Around-The-Clock Medical Staff*

In the Second Amended Complaint and throughout the course of this litigation, Plaintiff has intimated that Huntingdon County Defendants violated the Eighth Amendment by not having an around-the-clock medical staff on duty at the Huntingdon County Prison.   However, federal district courts have consistently concluded that the Constitution does not require prisons to employ an around-the-clock medical staff:

> The Constitution does not require the Jail to have medical staff on duty twenty-four hours a day.  See Bennett v. Reed, 534 F.Supp. 83, 87 (E.D. N.C. 1981) (absence of a qualified nurse on twenty-four hour duty did not violate prisoner's constitutional rights), aff'd, 676 F.2d 690 (4th Cir. 1982); Williams v. Limestone Cnty., 198 Fed. Appx. 893 (11th Cir. 2006) (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights.

Parker v. Amos, No. 7:11-CV-129, 2011 WL 3568836, *3 (W.D. Va. Aug. 15, 2011).

> The Constitution requires prison officials to provide timely and adequate medical (and dental) care to prisoners.  It does not require that every prison and jail have medical staff on duty twenty-four hours

a day.  See Bennett v. Reed, 534 F.Supp. 83, 87 (E.D. N.C. 1981) (absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights); Williams v. Limestone Cnty., 198 Fed.Appx. 893, 897 (11th Cir. 2006) (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights); Robinson v. Conner, 2012 WL 2358955, *5 (M.D. Ala. 2012) (holding that prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim); Parker v. Amos, 2011 WL 356836, *3 (W.D. Va. 2011) (holding that jails and prisons are not required to provide twenty-four hour emergency care facilities).

Obata v. Harrington, No. 13-137, 2013 WL 1442481, *3 (D. Haw. Apr. 8, 2013).

In arguing that Huntingdon County Defendants violated the Eighth Amendment in failing to provide twenty-four hour medical care at the Huntingdon County Prison, Plaintiff attempts to constitutionalize an issue that other courts have already rejected.  Namely, the Constitution does not impose an obligation on every correctional facility to employ around-the-clock medical staff, and the failure to provide a full-time medical staff does not violate the Eighth Amendment.  Indeed, Mr. Lindsay, Plaintiff's expert, has admitted that the Constitution does not require a prison to employ a twenty-four hour medical staff.  See Statement of Undisputed Material Facts at ¶ 32.  Accordingly, judgment should be entered in favor of Huntingdon County Defendants on Plaintiff's standalone Eighth Amendment claim based on the failure to provide an around-the-clock medical staff at the Huntingdon County Prison.

### 3.    *The Eighth Amendment Does Not Require A Correctional Facility To Install A Thermometer In Every Cell Block*

In the Second Amended Complaint and throughout the course of this litigation, Plaintiff has intimated that Huntingdon County Defendants violated the Eighth Amendment in failing to install a thermometer in the main cell block. However, after thorough research, Huntingdon County Defendants have uncovered no case in which a court has found that the Constitution requires a correctional facility to install a thermometer in its cell block. In the absence of any decisional law indicating that a prison must install thermometers in order to comply with the Eighth Amendment's prohibition on cruel and unusual punishment, Plaintiff's Eighth Amendment claim based on the lack of a thermometer in the main cell block is without merit, and judgment should be entered in Huntingdon County Defendants' favor on that claim pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**B.    Judgment Should Be Entered In Favor Of Defendants Black And Bair On Plaintiff's Claim For Deliberate Indifference To A Serious Medical Need Because Plaintiff Can Offer No Evidence To Suggest The Personal Involvement Of Either Defendant In The Acts And/Or Omissions On Which The Claim Is Based**

In the Second Amended Complaint, Plaintiff appears to assert a claim against Warden Black and Deputy Warden Bair for deliberate indifference to Plaintiff's serious medical need. See Doc. 37 at ¶¶ 8, 11, 17, 18, 22.

10

To demonstrate a *prima facie* case of cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted with 'deliberate indifference to his or her serious medical needs.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)). This Honorable Court has expanded on the showing required to state a claim for deliberate indifference to a serious medical need:

> The standard established by the United States Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976) and its progeny has two prongs: 1) it requires deliberate indifference on the part of the prison officials and 2) it requires the prisoner's medical needs to be serious. Monmouth Cnty. Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) *cert. denied*, 486 U.S. 1006 (1988).
>
> With regard to the deliberate indifference prong, "it is only such [deliberate] indifference that can violate the Eighth Amendment; allegations of 'inadvertent failure to provide adequate medical care,' or of a 'negligence...diagnosis' simply fail to establish the requisite culpable state of mind.' Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 97).

Little v. Lycoming Cnty., 912 F.Supp. 809, 815 (M.D. Pa. 1996).

With respect to the first prong of the Estelle test, "[s]uch indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, or persistent conduct in the face of resultant pain and risk of permanent injury." Robinson v.

Doe, No. 3:14-CV-376, 2014 WL 4968291, *2 (M.D. Pa. Oct. 3, 2014) (citations and quotation omitted).  With respect to the second prong of the Estelle test, "[a] 'serious medical need' is one 'that is so obvious that a lay person would easily recognize the necessity of a doctor's attention." Flanagan v. Shively, 783 F. Supp. 922, 932 (M.D. Pa. 1992) (quoting Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988)). Furthermore, "courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims." Njos v. United States, No. 3:14-CV-1960, 2015 WL 5695658, *9 (M.D. Pa. Sept. 24, 2015) (Carlson, M.J.) (citing Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Garvey v. Martinez, No. 08-CV-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States, No. 06-CV-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007)).

In addition: "A supervisory defendant in a § 1983 action may not be liable based merely on the theory of *respondeat superior*." Broadwater v. Fow, 945 F.Supp.2d 574, 587 (M.D. Pa. 2013) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  To that end, "[a][n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In the instant case, judgment should be entered in favor of Warden Black and Deputy Warden Bair on Plaintiff's claim for deliberate indifference to a serious medical need. The evidence adduced during discovery revealed that Deputy Warden Bair was not on-duty at the Huntingdon County Prison on the weekend of July 24, 2011, the date of Plaintiff's alleged harm. See Statement of Undisputed Material Facts at ¶ 28. Rather, Deputy Warden Bair was not aware of Plaintiff's medical issues until he was notified by a correctional officer that Plaintiff had been placed in the holding cell for medical observation *at the direction of Nurse Watkins.* Id. at ¶ 29. Bair was subsequently notified of Plaintiff's hospitalization. Id. at ¶ 30. Similarly, the evidence of record shows that Warden Black was also unaware of Plaintiff's medical needs until he was informed of Plaintiff's hospitalization by Deputy Warden Bair on the evening of July 24, 2011. Id. at ¶ 27.

In light of the uncontroverted evidence showing that neither Warden Black nor Deputy Warden Bair knew of Plaintiff's medical issues until after he had been transferred to the holding cell for medical observation at Nurse Watkins' recommendation—or, in Warden Black's case, not until after Plaintiff had been

13

hospitalized—shows that those Defendants cannot be held liable for deliberate indifference. Preliminarily, Warden Black and Deputy Warden Bair were not personally involved in tending to Plaintiff's medical needs. Absent personal involvement, Defendants Black and Bair cannot be held liable under Section 1983 as a matter of law. Beyond this, Black and Bair could not have exhibited deliberate indifference—which requires subjective knowledge of an inmate's medical need—because neither Defendant was aware of Plaintiff's situation until after medical intervention had occurred. Thus, Black and Bair did not possess the requisite knowledge of Plaintiff's medical needs to which they could have exhibited deliberate indifference in the first place. Finally, with respect to Deputy Warden Bair, Bair cannot be held liable for deliberate indifference because he was entitled to rely on the treatment decisions of Nurse Watkins. For these reasons, Defendants Black and Bair are entitled to judgment as a matter of law, and summary judgment should be entered in their favor on Plaintiff's claim for deliberate indifference to a serious medical need pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**C.    Summary Judgment Should Be Entered In Favor Of Huntingdon County Defendants On Plaintiff's <u>Monell</u> Claim Based On A Purported Policy Of Leaving Showers On To Increase The Temperature Of The Main Cell Block Of The Huntingdon County Prison Because No Evidence Substantiates The Claim**

In the Second Amended Complaint, Plaintiff attempts to assert a <u>Monell</u> claim against Huntingdon County Defendants based on a purported policy of leaving showers running to increase the temperature of the main cell block of the Huntingdon County Prison.  Doc. 37 at ¶ 9.  However, the evidence adduced during discovery revealed that the Huntingdon County Prison has implemented no policy under which officials leave showers running to increase the temperature of the main cell block.  <u>See</u> Statement of Undisputed Material Facts at ¶ 18.  To the contrary, the evidence of record shows that correctional officers turn on the showers in the main cell block of the Huntingdon County Prison twice daily so inmates can fulfill daily hygiene needs.  <u>Id.</u> at ¶¶ 15-17.  However, correctional officers turn the showers off when not in use.  <u>Id.</u> at ¶ 16.  Beyond this, the showers in the main cell block can be manually shut off by the inmates.  <u>Id.</u> at ¶ 17.

In light of the foregoing, there is no genuine issue of material fact concerning whether Huntingdon County Defendants can be held liable based on a purportedly unconstitutional policy of leaving showers running to increase the temperature of the Huntingdon County Prison.  Simply put, the policy upon which Plaintiff bases this claim does not exist.  Rather, the showers of the main cell block

are turned on twice daily to permit inmates to shower and are shut off when not in use. Surely, Huntingdon County Defendants cannot be held liable for violating the Constitution simply for providing inmates with the ability to meet daily hygiene needs. Further, from a factual perspective, inmates in the main cell block are able to shut off the showers on their own, so there is no basis for a jury to consider whether officials left showers running to increase the temperature of the cell block. For these reasons, Huntingdon County Defendants are entitled to judgment as a matter of law, and summary judgment should be entered in their favor on Plaintiff's Monell claim pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**D.    Defendants Black And Bair Are Entitled To Qualified Immunity On Plaintiff's Claims Arising Out Of The Lack Of Air Conditioning, A Full-Time Medical Staff, And Thermometers In The Main Cell Block Because Those Claims Are Not Based On Clearly Established Constitutional Rights**

To the extent this Honorable Court finds that Plaintiff has created a genuine issue of fact for trial concerning his Eighth Amendment claims arising out of the lack of air conditioning in the main cell block, lack of a thermometer in the main cell block, or lack of an around-the-clock medical staff, then Defendants Black and Bair are nonetheless entitled to qualified immunity on those claims. This Honorable Court has stated the following with respect to the doctrine of qualified immunity:

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 230 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Saucier v. Katz, the Supreme Court set out a sequential two-step analysis for claims of qualified immunity:

> First a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Supreme Court has recently eliminated the requirement that Saucier's two steps be analyzed in sequential order, however:

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. [Judges] should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id. at 818.

Lease v. Fishel, No. 1:07-CV-0003, 2010 WL 1390607, at *7 (M.D. Pa. Mar. 31, 2010). "As a general matter, a right is clearly established for purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006) (quoting Saucier, 533 U.S. at 202).

17

For the reasons stated more fully in Section A, *supra*, Defendants Bair and Black are entitled to qualified immunity. That is to say, there is no clearly established constitutional right for an inmate to be housed in an air conditioned prison cell. To the contrary, federal courts have consistently concluded that prison cells without air conditioning comported with the Constitution even in areas far warmer than Huntingdon County, Pennsylvania. Similarly, courts have held that a prison need not employ an around-the-clock medical staff, so there is no clearly established right to the same. Finally, Huntingdon County Defendants have located no case imposing a constitutional obligation upon prisons to install thermometers in each cell block, rendering any such right not clearly established. Because none of the aforesaid constitutional rights are clearly established—which "rights" Huntingdon County Defendants contend are not recognized constitutional rights in any event—Defendants Black and Bair are entitled to qualified immunity on those claims, and summary judgment should be entered in their favor pursuant to Rule 56 of the Federal Rules Of Civil Procedure.

**E.    Assuming That Judgment Is Entered In Favor Of Defendants Black And Bair With Respect To Plaintiff's Individual Capacity Claims, Then Defendants Black And Bair Should Be Dismissed As Parties To This Case Because Plaintiff's Official Capacity Claims Against Them Are Redundant Of The Claims Against Huntingdon County And The Huntingdon County Prison Board**

Assuming, *arguendo*, that this Honorable Court enters judgment in favor of Defendants Black and Bair on the individual capacity claim asserted against them,

18

*i.e.* Plaintiff's claim for deliberate indifference, then those individuals should be dismissed from this action because the remaining, official capacity claims against them are duplicative of the claims against Huntingdon County and the Huntingdon County Prison Board. The only identifiable individual capacity claim against Defendants Black and Bair is Plaintiff's claim for deliberate indifference.[2] See Doc. 37, *generally*. The remaining claims against Defendants Black and Bair all arise out of the alleged promulgation of certain policies, customs, and practices at the Huntingdon County Prison. Id. Section 1983 claims against municipal officials based on the promulgation of allegedly unconstitutional policies, practices, or customs are construed as official capacity claims. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

The Supreme Court has explained that a suit against a municipal officer in his official capacity is the functional equivalent of a suit against the municipality itself:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Brandon v. Holt, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. See, e.g. Kentucky v. Graham, 473 U.S. 159, 165-66; Monell, *supra* at 690 n.55.

---

[2] For the reasons stated in Section B, *supra*, Defendants Black and Bair respectfully submit that they are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim. This argument is raised only to the extent that this Honorable Court does, in fact, enter summary judgment in favor of Defendants Black and Bair on the deliberate indifference claim.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Kohn v. School Dist. of City of Harrisburg, 817 F. Supp. 2d 487, 510 (M.D. Pa. 2011) (citing Bittner v. Snyder Cty., 345 Fed. Appx. 790, 792 (3d Cir. 2009)) (explaining that "[i]t is true that official capacity suits against individual defendants are really against the employing governmental entity....")

In this case, Plaintiff's official capacity claims against Defendants Black and Bair are technically claims against Huntingdon County and/or the Huntingdon County Prison Board. However, Plaintiff has named Huntingdon County and Huntingdon County Prison Board as Defendants in this action, and the claims asserted against those entities are based on identical facts and legal theories as the official capacity claims against Defendants Black and Bair. Thus, the official capacity claims against Defendants Black and Bair are superfluous, as those claims are redundant of the claims Plaintiff has asserted against Huntingdon County and the Huntingdon County Prison Board. Accordingly, to the extent the only remaining claims against Defendants Black and Bair are official capacity claims, then Defendants Black and Bair should be dismissed as parties to this action because the remaining claims against them are redundant of claims already asserted against Huntingdon County and the Huntingdon County Prison Board.

## IV.   CONCLUSION

For the foregoing reasons, Huntingdon County Defendants respectfully request that this Honorable Court grant their Motion for Partial Summary Judgment.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

Date: 4/28/16                  By:   /s Hugh P. O'Neill, III
                                     Hugh P. O'Neill, III, Esq.
                                     PA Attorney I.D. #69989
                                     Matthew R. Clayberger, Esq.
                                     PA Attorney I.D. #316102
                                     305 North Front Street
                                     P.O. Box 999
                                     Harrisburg, PA  17108
                                     (717) 255-7629
                                     Attorneys for Huntingdon County
                                     Defendants

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Local Rule 7.8, the undersigned hereby certifies that the total word count for Huntingdon County Defendants' Brief in Support of their Motion to Dismiss totals 4,857 according to the "Word Count" function available in Microsoft Word.

**THOMAS, THOMAS & HAFER, LLP**

By:   <u>s/ Hugh P. O'Neill, III</u>
       Hugh P. O'Neill, III, Esq.

## CERTIFICATE OF SERVICE

I, Hugh P. O'Neill, III, Esquire, of the law firm of Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document was served upon counsel of record in the manner and on the date set forth below:

### By the Middle District Court via Electronic Filing:

David F. Binder, Esquire                dave@gsgattorneys.com


**THOMAS, THOMAS & HAFER, LLP**

Date: 4/28/16            By:    s/ Hugh P. O'Neill, III
                                Hugh P. O'Neill, III, Esq.


2027576.1