## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN FORSHEY, an incapacitated Person, by the Guardian of his person and estate, LINDA J. FORSHEY, | CIVIL ACTION NO. 1:13-CV-00285 |
| Plaintiff, | (RAMBO, J.) (MEHALCHICK, M.J.) |
| v. | |
| HUNTINGDON COUNTY, et al., | |
| Defendants. | |

### REPORT AND RECOMMENDATION

Linda J. Forshey, on behalf of incapacitated Plaintiff Brian Forshey ("Forshey") initiated the above-captioned civil rights action by the filing of a complaint on February 5, 2013. (Doc. 1). This matter is grounded on alleged deficiencies in the conditions of confinement and deliberate indifference to a medical need exhibited by the named Defendants in the care of Brian Forshey, while Forshey was a pre-trial detainee at Huntingdon County Prison.

I.   **BACKGROUND**

Forshey was a pre-trial detainee in Huntingdon County Prison ("HCP") in the months leading up to and on July 24, 2011. HCP is a small, two story prison that can accommodate 48 inmates at any given time. The inmates are spread across 25 cells, 15 of which are on the upper floor; including the one where Forshey resided. While the first floor and the guard's area on the second floor both received air conditioning, the main cell block on the upper floor, where a majority of the incarcerated inhabitants lived, did not. The upper floor cell block had multiple fans to circulate the air and inmates living there could purchase smaller fans for their cells. Inmate testimony disputes that the fans even circulated the air, claiming the fans were too dirty

to perform their most basic function. (Doc. 64-2, at 52). In addition, although inmates had access to running water that they could use to cool off, the liquids offered to inmates were not cold and ice was unavailable. (Doc. 64-2, at 56-57).

In the days leading up to July 24, 2011, Pennsylvania experienced a heatwave. Temperatures in the Huntingdon area exceeded 100˚. Corrections Officer ("C/O") Wise noticed Forshey acting strangely on the evening of July 23, 2011, with Wise's incident report stating Forshey was unstable and complaining of dizziness. (Doc. 63-5, at 26). Officers placed a wet towel on his neck. (Doc. 63-5, at 26). No further actions or incidents that night were reported. The next day, Lieutenant Glover asked Wise to check on Forshey after Glover observed Forshey struggling on his way to the showers. (Doc. 63-5, at 10). According to the July 24, 2011, incident report, Forshey told Wise he felt lightheaded. (Doc. 63-5, at 30). This was sometime around 4 p.m., as afternoon showers occurred at 4 as a matter of routine. Wise conferred with C/O Maese, who contacted Nurse Watkins by telephone, and, upon her recommendation, Wise transferred Forshey to a holding cell for "observation." (Doc. 63-5, at 30). Huntingdon did not have full time medical personnel who could render immediate assistance to Forshey. (Doc. 63-1, at 18). Nurse Watkins worked at the facility four days per week and her supervisor, Dr. Minor, just once per week for a few hours.[1] The prison had no other medical staff, nor did officers have access to basic medical instruments such as thermometers.

_____

[1] Nurse Watkins has since been promoted to full time status. She is not a named Defendant in this action.

2

Around 7:40 p.m., Wise observed Forshey lying on the bunk in the non-air-conditioned holding cell, unresponsive to verbal commands. (Doc. 63-5, at 12). Forshey also appeared to have urinated on himself, despite the availability of a toilet in the cell. (Doc. 63-5, at 13). Wise asked another C/O to get a wet towel, while C/O Maese called Nurse Watkins. (Doc. 63-5, at 13). Watkins advised officers to call for an ambulance while they attempted to cool him down. (Doc. 63-5, at 13). The ambulance came sometime thereafter and transported Forshey to the hospital. By the time Forshey arrived at the hospital, he had a body temperature of 108˚ and suffered irreparable brain damage.

II.    **PROCEDURAL HISTORY**

Linda Forshey—the Plaintiff's mother—filed suit on his behalf on February 5, 2013, under 42 U.S.C. § 1983, alleging the conditions of Forshey's confinement and remedial measures of medical assistance violated his constitutional rights and constitute deliberate indifference, leading to his current condition. (Doc. 1). The complaint identified Huntingdon County, the Huntingdon County Commissioners, the Huntington County Prison Board, seven Prison Board members, Warden Duane Black, Deputy Warden Darrell Bair, and Doctor Mark Minor as Defendants. (Doc. 1, at 1-3). On April 12, 2013, the County, Commissioners, Prison Board, individual Prison Board members, Warden Black, and Deputy Warden Bair moved for dismissal of all claims against them. (Doc. 4). On July 18, 2013, Doctor Minor did likewise. (Doc. 10). The Court recommended dismissal of all claims and parties without prejudice except for Fourteenth Amendment claims against Defendants Black, Bair, and Minor. (Doc. 13). The District Court adopted this Court's Report and Recommendation, granting Forshey leave to amend. (Doc. 14).

Forshey filed an amended complaint on April 2, 2014. (Doc. 19). The amended complaint retained Defendants Black, Bair, and Minor, while renewing claims against Huntingdon County, and the Huntingdon County Prison Board—eliminating the Huntingdon County Commissioners and individually named Prison Board members. (Doc. 19, at 1). On April 21, 2014, the County, Prison Board, Black, and Bair again moved for dismissal. (Doc. 21). The Court again recommended dismissal of the claims against the County and Prison Board, but not the individual Defendants. (Doc. 33). On January 27, 2015, the District Court deferred ruling on the Recommendation on the basis that further evidence was necessary to develop the claims. (Doc. 36). The Court ordered Defendants Black, Bair, and Minor to participate in depositions administered by Forshey's counsel within 20 days to allow for development of a potential second amended complaint upon which a ruling could be made. (Doc. 36).

Forshey filed a second amended complaint on March 26, 2015, naming the same Defendants as the amended complaint, and asserting a conditions of confinement claim and claim of deliberate indifference to a serious medical need. (Doc. 37). On April 6, 2015, the County, Prison Board, Warden Black, and Deputy Warden Bair (the "Huntingdon Defendants") again filed a motion to dismiss. (Doc. 39). The Court recommended this motion be denied. (Doc. 47). On September 2, 2015, the District Court adopted this Court's Report and Recommendation, denying Defendant's motion to dismiss. (Doc. 48). On January 21, 2016, Forshey voluntarily dismissed Defendant Minor. (Doc. 53). On April 29, 2016, the Huntingdon Defendants filed a motion for partial summary judgment. (Doc. 61). In their motion, Defendants seek: (1) summary judgment in their favor on Forshey's Eighth Amendment claims

concerning lack of air conditioning, twenty-four hour medical staff, and thermometers in the main cell block (Forshey's conditions of confinement claim); (2) summary judgment in their favor on Forshey's deliberate indifference claims against Defendants Black and Bair; and (4) summary judgment in their favor on Forshey's *Monell* claim asserting a prison policy of leaving showers on to increase the temperature of the cell block. Forshey filed a brief in opposition on May 18, 2016. (Doc. 64). Defendants replied on May 26, 2016. (Doc. 67). The Defendants requested oral argument, in part seeking to clarify confusion as to what particular claims and legal theories were being raised by Forshey. (Doc. 68). The Court conducted oral argument on Defendants' motion for partial summary judgment on June 28, 2016. This matter is now ripe for disposition.

## III.   SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson,* 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury . . . could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693-94 (3d Cir. 1988). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV.   DISCUSSION

### A.   FORSHEY'S FOURTEENTH AMENDMENT CONDITION OF CONFINEMENT CLAIMS

#### 1.   A Pretrial Detainee's Condition of Confinement Claims are Properly Evaluated Under the Due Process Clause of the Fourteenth Amendment.

Typically, a prisoner challenging the conditions of his confinement asserts claims under the Eighth Amendment's prohibition of cruel and unusual punishment. *Edwards v. Northampton Cty.*, No. 16-2601, 2016 WL 6156005, at *2 (3d Cir. Oct. 24, 2016); *see, e.g., Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). To prevail, a prisoner must demonstrate a defendant acted with "deliberate indifference" to those conditions. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference is established if a defendant (1) "knows that inmates face a substantial risk of serious harm"; and (2) "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S.Ct. 1970. "[A]cting or failing

to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836, 114 S.Ct. 1970. As a pretrial detainee, Forshey's claim should be evaluated under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment. *Edwards v. Northampton Cty.*, No. 16-2601, 2016 WL 6156005, at *2 (3d Cir. Oct. 24, 2016); *see Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (*citing Bell v. Wolfish*, 441 U.S. 520, 535–36, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Under the Due Process Clause, "the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861. Pre-trial detainees have parameters that are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment. *Keller v. County of Bucks*. 2006 WL 3779749 *3 (3d Cir. Dec.22, 2006). The Third Circuit has not addressed the standard governing a pretrial detainee's conditions of confinement claim in a precedential opinion, but has stated in dicta that the state of mind requirement for prisoners' failure to protect claims—"deliberate indifference"—applies also to pretrial detainees' claims. *Edwards*, 2016 WL 6156005, at *2; *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991). As such, the Court will analyze Forshey's conditions of confinement claim using the "deliberate indifference" standard.

### 2. Individual Grievances Asserting Inadequate Conditions of Confinement May Be Aggregated to Comprise a Singular Constitutional Violation.

In asserting that they are entitled to summary judgment on Forshey's condition of confinement claims, Defendants identify three distinct conditions of confinement challenges by Forshey, and argue that none of the claims are in and of themselves constitutional violations: the lack of air conditioning in the main cell block, the lack of around-the-clock medical staffing,

and lack of thermometers in the cell block. In his brief in opposition and at oral argument, Forshey argues that each condition the Defendants seek judgment upon is part of a single, broader constitutional violation arising from the totality of the circumstances. (Doc. 64, at 9; Doc. 72, at 10). While Forshey contends that while none of the conditions may be individually *per se* unconstitutional, together they comprise a claim that he was subjected to cruel and unusual punishment due to inadequate conditions of confinement.

Claims asserting inadequate conditions of confinement[2] need not be comprised solely of claims that are constitutional violations on their own. In *Wilson v. Seiter*, the Supreme Court held:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

> *Wilson v. Seiter*, 501 U.S. 294, 304–05, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991).

As such, the Court will consideDr Forshey's conditions of confinement claim as an aggregate claim of a constitutional violation arising from the totality of the circumstances.

---

[2] As noted, as a pretrial detainee, Forshey's claims are properly analyzed under the Fourteenth Amendment, but the standard for analysis is the same under the Eighth Amendment and the Fourteenth Amendment. The standard is the same under both amendments. *Goode v. Giorla*, 643 F. App'x 127, 129 (3d Cir. 2016); *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir.1993).

### 3. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Conditions of Confinement Claim.

In order to implicate the Eighth Amendment, a condition of confinement must be one that is deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. *Gayle v. Harmon*, No. CV 15-1827, 2016 WL 4802872, at *3–4 (E.D. Pa. Sept. 13, 2016); c*iting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To meet this standard Plaintiff must be able to show serious conditions, such as "the denial of medical care, prolonged isolation in dehumanizing conditions, exposure to pervasive risk of physical assault, severe overcrowding, and unsanitary conditions." *Id.*; *citing Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir.1990). It is clear under *Wilson* that extreme cell temperatures may satisfy the objective deprivation requirement of an Eight Amendment claim if warranted by the surrounding circumstances. *Sampson v. Berks Cty. Prison*, 171 F. App'x 382, 385 (3d Cir. 2006); *see also Woodson v. City of Richmond, Va.*, No. 3:13CVL34, 2015 WL 586125, at *6 (E.D. Va. Feb. 11, 2015) (reiterating that the Supreme Court has held that the Eighth Amendment is violated when prisoners are exposed to extreme temperatures, absent reasonable efforts to ameliorate the effects thereof.) Further, whether the cell temperature, the length of the inmate's confinement in such temperatures, and the failure of prison officials to ameliorate the temperatures creates a sufficiently serious deprivation of the human need of adequate shelter to state a claim under the Eighth Amendment is often an issue to be determined by the trier of fact. *Id.; see Dixon v. Godinez*, 114 F.3d 640, 643-44 (7th Cir.1997) (holding that material dispute existed as to whether prison-issue clothing and blankets were sufficient to combat prolonged cold temperatures in cell).

In this case, Forshey submits that the record in this case, including Defendants' failure to install air conditioning in the main cell block, the failure to have round-the-clock medical staffing, the failure to install a thermometer in the main cell block, and the leaving of hot showers running, could enable a jury to conclude that the defendants were deliberately indifference to safety, health, and well-being of Forshey, thus precluding the entry of summary judgment on Forshey's conditions of confinement claim. The Court finds that a genuine issue of material fact exists as to whether the conditions of confinement violated Forshey's Fourteenth Amendment rights, and viewing the evidentiary record, and the reasonable inferences therefrom, in the light most favorable to Forshey, the non-moving party, Defendants are not entitled to summary judgment with respect to Forshey's Fourteenth Amendment claim at this time. As such, it is recommended that the Court deny Defendants' motion for summary judgment on Forshey's Fourteenth Amendment conditions of confinement claim.

### 4. Defendants Bair and Black Are Not Entitled to Qualified Immunity on Forshey's Conditions of Confinement Claim.

Defendants Black and Bair further move for summary judgment on Forshey's conditions of confinement claim on the grounds that they are entitled to qualified immunity on this claim, as no clearly established right exists. (Doc. 61). Notably, Defendants had moved for summary judgment on the basis of qualified immunity, alleging that no clearly established right exists to the discreet conditions of confinement issues – lack of air conditions, full time medical staff, and thermometers in the main cell block. However, as noted above, following clarification at oral argument, the Court will consider the claim in its aggregate, and will therefore consider Defendants' qualified immunity argument in that respect.

Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Supreme Court has noted that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 131 S.Ct. at 2080. The Court will proceed directly to the second prong of the qualified immunity analysis because Defendants solely contend that conditions of confinement did not violate a clearly-established right. (Doc. 19, at 4). "A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F.Supp.2d 574, 585 (M.D.Pa.2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083. Furthermore, the Third Circuit has noted that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269

11

F.3d 205, 211–12 n.4 (3d Cir. 2001). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 131 S.Ct. at 2084 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, ___ U.S. ____, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (*quoting al–Kidd*, 131 S.Ct. at 2084). At issue in this case is whether inmates have a constitutional right to be free from oppressive heat in their cells.

In this case, it is clear that extreme cell temperatures may satisfy the objective deprivation requirement of an Eight Amendment claim if warranted by the surrounding circumstances. *Sampson v. Berks Cty. Prison*, 171 F. App'x 382, 385 (3d Cir. 2006); *see also Woodson v. City of Richmond, Va.*, No. 3:13CVL34, 2015 WL 586125, at *6 (E.D. Va. Feb. 11, 2015). As such, the Court finds that such a right is clearly established, and therefore recommends that summary judgment on the grounds of qualified immunity be denied.

B. FORSHEY'S DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED CLAIM.

Defendants Bair and Black have moved for summary judgment on Forshey's claim of deliberate indifference to a serious medical need on the grounds that there is no evidence of any personal involvement by either Bair or Black in the acts or omissions giving rise to the claim.

Forshey claims that defendants' failure to provide him with necessary medical treatment during his incarceration violates his rights under the Eighth Amendment. Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, the Fourteenth Amendment provides "at least as much protection as does the Eighth Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals typically analyzes the both claims using the Eighth Amendment standard. *Twigg v. Kiel*, No. 1:14-CV-1787, 2016 WL 4191762, at *3 (M.D. Pa. Aug. 9, 2016); *Gannaway v. Berks Cnty. Prison*, 439 Fed. Appx. 86, 89 n.2 (3d Cir. 2011); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Therefore, the Court will analyze Forshey's claims pursuant to the Eighth Amendment standard.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (*citing Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth

13

amendment." *Id.* (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004); *Monmouth Cnty.*, 834 F.2d at 346.

For purposes of Eighth Amendment medical claims, nonmedical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Enright v. United States*, No. 1:14-CV-103, 2015 WL 5093346, at *4 (M.D. Pa. Aug. 28, 2015); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, nonmedical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004).

Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. *See, e.g., id.* at 236–37 (*citing Durmer*, 991 F.2d at 69); *Garvey v. Martinez*, No. 082217, 2010 WL 569852, at *6–7 (M.D.Pa.2010); *Hodge v. United States*, No. 06–1622, 2007 WL 2571938, at *5–6 (M.D.Pa.2007). Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207.

In this case, the undisputed evidence in the record indicates that Defendant Deputy Warden Bair did not know of Forshey's medical issues until *after* he had been transferred to the holding cell for medical observation *at Nurse Watkins' recommendation*. The record also establishes that Defendant Warden Black did not know of Forshey's medical issues until after he was hospitalized. As neither defendant was aware of Forshey's situation until after medical intervention had occurred, neither possessed the requisite knowledge of Forshey's medical needs to establish a claim of deliberate indifference. As such, it is recommended the Defendants Bair and Black be granted summary judgment in their favor, in their individual and official capacities,[3] on Forshey's claim of deliberate indifference to a serious medical need.

---

[3] Defendants Bair and Black also move for summary judgment in their favor on Plaintiff's claim for deliberate indifference against them in their official capacities. As the Court

*(footnote continued on next page)*

C. FORSHEY'S *MONELL*[4] CLAIMS

Defendants also seek summary judgment on Forshey's claim that guards left showers on, following policies promulgated by the Defendants, in order to increase the temperature and humidity in the cell block. In his brief in opposition, Forshey submits that the record contains evidence that should preclude summary judgment on this ground, and references statements of two inmates who recalled showers being left running while not in use. (Doc. 64, at 4). On this ground, having already recommended that Defendants' conditions of confinement claim should be considered by examining the aggregate of the conditions, only one of which is the running of the showers while not in use, the Court will recommend denial of summary judgment on this claim. The Court finds that a genuine issue of material fact exists as to whether a policy or custom existed such that, in viewing the record in a light most favorable to Forshey, a reasonable jury could find that Defendants liable for the promulgation of an overall policy or custom of creating a condition of confinement that violated Forshey's constitutional rights, including Defendants' failure to install air conditioning in the main cell block, the failure to have round-the-clock medical staffing, the failure to install a thermometer in the main cell block, and the leaving of hot showers running, thus precluding the entry of summary judgment on *Monell* liability on Forshey's conditions of confinement claim.

---

is recommending summary judgment against them in their individual capacities, it recommends the same in their official capacities, as such a claim is duplicative of Forshey's claims against Huntingdon County and the Huntingdon County Prison Board. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[4] *Monell v. Department of Social Services of City of the New York*, 436 U.S. 658 (1978).

Though not raised initially by Defendants in their motion for summary judgment, Forshey also generally makes an argument that *Monell* liability exists for his deliberate indifference to a serious medical need claim, and on the basis of Nurse Watkins acting as the final policy maker on treatment of prisoners. (Doc. 64, at 15).[5] Though not initially raised by Defendants, Defendants do address this claim, and substantial time was spent at oral argument on this issue.

For a municipality to be liable for harms suffered by a plaintiff in a § 1983 action, a two-step inquiry must be made. "[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Liability extends to the municipality where the plaintiff's harm is suffered as a result of enforcement of a municipal policy established via either: (1) express municipal policy; (2) widespread practice that, while not written down formally, constitutes custom or usage with the force of law; or (3) the decision of a person with final policymaking authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). In order for Defendants to be liable, Forshey must provide evidence that there was a relevant policy or custom, and that the policy caused the constitutional violation they allege.

_____

[5] Forshey further alludes to "after-the-fact" indifference of the Defendants as evidence of a *Monell* claim against Defendants. There is no motion for summary judgment pending regarding this evidence, and the Court finds that it is irrelevant to an analysis of *Monell* liability on Forshey's conditions of confinement and deliberate indifference to a serious medical need claims. As such, the Court will not address that evidence here, without prejudice to the Defendants seeking a ruling on the admissibility or relevance of the same at the time of trial.

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003); *see Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); *citing Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir.1996) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Id.; quoting Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382. There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Id.; quoting Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id*. Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *Bryan County*, 520

U.S. at 417–18, 117 S.Ct. 1382 (*quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Official policy does not always mean written policies, but also includes plans of action to be followed under similar circumstances consistently and over time. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Where policy is not formally adopted, it can still be created and attach to a municipality through widespread practices constituting custom or usage with the force of law or a decision by a person with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

The power to establish policy is not the exclusive province of the legislature. *Wallace v. Powell*, No. 3:09-CV-0291, 2009 WL 6850318, at *6 (M.D. Pa. Nov. 20, 2009); *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir.2005). "*Monell'*s language makes clear that it expressly envisioned other officials whose acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cinncinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (internal quotations omitted). "[T]he authority to make municipal policy is necessarily the authority to make final policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* Similarly, "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." *Id.* Any inquiry into the status of an official as a final policy-maker must focus on whether decisions are final on a particular issue, not in an "all or nothing manner." *Wallace v. Powell*, No. 3:09-CV-

0291, 2009 WL 6850318, at *6 (M.D. Pa. Nov. 20, 2009); *citing McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Praprotnik*, 485 U.S. at 123 (official must have final policy-making authority in that area of the city's business). The identification of policy-making officials is not a question of fact, but is instead a question of law which is appropriate for the court to determine. *Id.*; *citing Praprotnik*, 485 U.S. at 125–26.In *McMillian v. Monroe County*, the Supreme Court set forth the applicable standard when determining if a governmental actor has final policy-making authority as a county actor under § 1983. The Court noted that state law controlled the determination of whether an actor has final policy-making authority. *McMillian*, 520 U.S. at 783; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 135, n. 11 (3d Cir. 2010). The Court also emphasized that the inquiry must be focused on the specifically alleged conduct, rather than the general authority of that position under state law. *Id.* at 783.

A county prison board, such as Huntingdon County Prison Board, is entrusted to with the duty to oversee the health and safekeeping of inmates within a county correction facility, 61 Pa. C.S. § 1724(a), and to promulgate the rules and regulations necessary for the proper operation of a county correctional facility. 61 Pa. C.S. § 1725. Further, Forshey's argument rests on the point that Nurse Watkins may have had the final say on Forshey's treatment when Dr. Minor was not present. (Doc. 64, at 15). The Court finds a recent decision by the Court of Appeals for the Seventh Circuit instructive in this regard. In *Whiting v. Wexford Health Sources, Inc.*, the Seventh Circuit determined that while a prison doctor may have had the final say on the plaintiff's treatment plan, and was therefore the final decisionmaker with respect to his care, that was not enough to show he was the final policymaker. *Whiting v. Wexford Health Sources,*

*Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *see Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (noting difference between having decision-making authority for some decisions and having the responsibility "for establishing final government policy on a particular issue").

Based on the above, to the extent Forshey is pursuing a claim against Huntingdon County or Huntingdon County Prison Board on the basis of Nurse Watkins' conduct, it is recommended that Defendants' motion for summary judgment be granted.

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that that Defendants' partial motion for summary judgment (Doc. 61) be **GRANTED in part and DENIED in part**. Specifically, it is recommended that:

1. Defendants' motion for summary judgment on Forshey's conditions of confinement claim be DENIED;

2. Defendants Bair and Black are not entitled to qualified immunity on Forshey's conditions of confinement claim;

3. The motion for summary of judgment of Defendants Bair and Black, in their individual and official capacities, on Forshey's deliberate indifference to a serious medical need be GRANTED;

4. Defendants' motion for summary judgment on any *Monell* liability for Forshey's conditions of confinement claim related specifically to the running of showers while not in use be DENIED; and

5. Defendants' motion for summary judgment on any *Monell* liability for Forshey's deliberate indifference claim arising from Nurse Watkins' conduct be GRANTED.

**Dated: December 9, 2016**                    *s/ Karoline Mehalchick*
                                               **KAROLINE MEHALCHICK**
                                               **United States Magistrate Judge**

21

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN FORSHEY, an incapacitated person, by the Guardian of his Person and Estate, LINDA J. FORSHEY, | CIVIL ACTION NO. 1:13-CV-00285 |
| Plaintiff | (RAMBO, J.) (MEHALCHICK, M.J.) |
| v. | |
| HUNTINGDON COUNTY, et al., | |
| Defendants. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 9, 2016**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **December 9, 2016**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**